ams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-40002-01-JAR |
| | ) | |
| ISAAC E. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

The Court now considers the government's Motion for Order that Defendant be Involuntarily Medicated to Restore Competency to Stand Trial (Doc. 77).[1]  Defendant has responded and opposes the motion.  The Court conducted a hearing on the matter on May 21, 2007 and the parties submitted post-hearing briefs.  The Court has reviewed the briefs, along with the evidence adduced at the hearing and is prepared to rule.  As described more fully below, the Court orders defendant to consult with his counsel and doctors about voluntarily submitting to take the anti-psychotic medication Abilify in a dosage closely monitored by a physician.  If defendant does not voluntarily submit to this medication within ten days of his restoration of competency hospitalization, the Court will enter an order for involuntary administration of the medication.

**I.      Procedural History**

This defendant has a long and protracted history of competency issues in this case and has been in pre-trial custody for approximately twenty-eight months.  A more detailed history of

_____

[1]The government made this motion orally at a status conference held on March 26, 2007.

the competency evaluations, hearings, and findings in this case is outlined in this Court's

Memorandum and Order of January 11, 2007.[2]  Prior to defendant's second competency hearing,

the Court ordered a psychological evaluation be conducted by Dr. George Hough and such

examination was conducted on October 31, 2006.  His report indicates that defendant has

stopped using his anti-psychotic medication, Abilify, since the last time he examined him the

year before.  Dr. Hough concludes that off of this medication, defendant does not have the

capacity to disclose to his attorney facts pertinent to the proceedings at issue, nor does he have

the capacity to testify relevantly.  Dr. Hough's testimony at the December 19, 2006 competency

hearing was consistent with his report.  He further testified that, in his opinion, defendant's

incompetence is not permanent because Abilify should restore his competence.  However,

defendant told Dr. Hough that he did not want to go back on the Abilify because he did not think

he needed it and felt that he "had moved on."  In conjunction with the motion to determine

competency, defendant's counsel has filed a motion to withdraw due to defendant's insistence on

representing himself at trial in this matter.

     The Court determined that defendant is "presently suffering from a mental disease or

defect rendering him mentally incompetent to the extent that he is unable to understand the

nature and consequences of the proceedings against him or to assist properly in his defense."[3]

For the reasons outlined by Dr. Hough in both his live testimony and his evaluation, the Court

found under the above standard that defendant is not competent to stand trial.  Therefore,

pursuant to 18 U.S.C. § 4241(d)(2), defendant was remanded to the custody of the Bureau of

---

[2](Doc. 70.)

[3](*Id.*); *see* 18 U.S.C. § 4241(d).

Prisons ("BOP") for restoration of competency measures.  However, given Dr. Hough's testimony about the impact of Abilify on defendant's competency, the Court indicated that the issue of involuntary administration of this medication would be appropriate.  Accordingly, the government has moved for this Court to order that defendant be involuntarily medicated in order to restore his competency to stand trial, under the standard set forth in *Sell v. United States*.[4]

The Court ordered a local follow-up examination be conducted by a medical professional who would be able to address all of the factors set forth in *Sell* and that a report of the examination be submitted to the Court.[5]  Defendant was examined by Dr. William Logan on March 21, 2007.[6]  Dr. Logan also reviewed defendant's mental health history as documented by Dr. Lisa Hope on November 14, 2005 and by Dr. Hough on December 20, 2005 and in October 2006.  Dr. Logan describes defendant's reasoning for refusing to take the medication as somewhat motivated by his religiosity.  According to Dr. Logan, defendant believes that God has healed him.  Moreover, defendant indicated to Dr. Logan that he fears a decrease in his alertness and an increase in passivity when on Abilify, such that he would accept an unfavorable plea agreement.  Defendant did, however, acknowledge that Abilify had been helpful in calming him and helping him to organize his thoughts when he took it previously.

Dr. Logan testified that defendant suffers from a mild form of schizophrenia, which is a long-term chronic condition causing thought disorganization, unusual beliefs, and hallucinations.

---

[4] 539 U.S. 166 (2003).

[5] Dr. Hough is a licensed clinical psychologist.  The Court ordered that a psychiatrist evaluate defendant in order to determine the medication issue.

[6] While the report states "Information and Observations of Mr. Smith on 3/21/06," the year indicated appears to be a typo and the examination was in fact on March 21, 2007, as Dr. Logan indicated in his live testimony.

In defendant's case, Dr. Logan indicated that he suffers primarily the symptoms of paranoia and suspicion.  These symptoms, while not always extreme, intensify when it comes to discussing his criminal case, as he believes that his attorneys are "selling him down the river" and he fears a lengthy separation from his young son.

Dr. Logan testified that even though defendant suffers from a mild form of schizophrenia, it is necessary that it be treated by medication, because without it, therapy does not tend to work. At a low dosage level, Dr. Logan testified that administration of Abilify would be medically appropriate in light of defendant's medical condition.  Dr. Logan concluded in his report that "[m]edication (Abilify) could make him less paranoid and suspicious of his counsel's motives and thus more open to advice as opposed to relying on other means of decision making."  Also, he testified that Abilify could render defendant better able to listen to his attorney's advice and make an educated decision on whether to accept a plea agreement or go to trial.  While it may still be possible that he would seek to go to trial and represent himself once on the Abilify, Dr. Logan believed that his paranoia would still be reduced.

Dr. Logan emphasized that the dosage level of Abilify administered to defendant would be important.  Defendant has in the past experienced side effects of the medication that include sedation, or lethargy, and salivation.[7]  Dr. Logan reported that these side effects were "dose-related" and that they were "significantly reduced or eliminated by decreasing the dose."  Dr. Logan did acknowledge that if the medication did, in fact, prevent him from thinking quickly or cause him not to pay attention to details, it "could adversely affect the fairness of a trial."  Dr. Logan recommended defendant be re-evaluated once on a therapeutic dose of Abilify to ensure

---

[7]Dr. Logan testified that other possible side effects of Abilify include nausea, vomiting, and tremors, but that none of these were reported by defendant.

4

the side effects are minimal.[8]  While there is no guarantee, Dr. Logan concludes that treating defendant with Abilify would be substantially likely to return him to a status in which he would be competent to stand trial.

## II.    Analysis

The Supreme Court has stated that a criminal defendant has a "significant liberty interest in avoiding unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."[9]  In *Sell*, the Court made clear that the decision to involuntarily administer medication to a defendant solely to render that defendant competent to stand trial should be "rare" and occur only in "limited circumstances."[10]  The Court set forth a number of factors that must be considered when deciding whether the involuntary administration of antipsychotic drugs should be ordered to render a defendant competent to stand trial.

As a predicate to the *Sell* factors, the Court notes that it has already made the necessary finding that defendant is not competent to stand trial, as defined in 18 U.S.C. § 4241.  Also, there is no evidence in the record of "an independent and sufficient basis to otherwise order their administration, such as where the defendant is dangerous or where withholding of the drugs would endanger his or her health."[11]  While both Dr. Hough and Dr. Logan have concluded that the administration of Abilify to this defendant is medically necessary in light of his medical condition, neither believed him to be a danger without it, nor did they conclude that his health would be in danger without it.  Dr. Logan explicitly found that defendant did not pose a risk to

---

[8]Dr. Logan testified that such a dose would be between 10 and 15 milligrams per day.

[9]*Washington v. Harper*, 494 U.S. 210, 221–22 (1990).

[10]*Sell v. United States*, 539 U.S. 183, 169, 180 (2003).

[11]*United States v. Bradley*, 417 F.3d 1107, 1114 n.13 (10th Cir. 2005) (citing *Sell*, 539 U.S. at 181–83).

himself or others, nor was his health gravely at risk without Abilify.  Because the involuntary administration of medication here would be solely to restore defendant's competency, the Court now addresses the factors set forth in *Sell*.

### *Legal Findings*

First, the Court must determine whether important governmental interests are at stake.[12] It is "well-settled" that "the Government's interest in bringing a criminal defendant to trial [is] fundamental."[13]  "The government has an important interest in prosecuting defendants for serious crimes with which they are charged and in ensuring their mental competence for the duration of their prosecutions."[14]  Defendant argues that this important governmental interest is diminished by the facts of this case.  Defendant points to the fact that the drug sales that form the basis of the charges were for small amounts (less than five grams total), that there is no relevant conduct, that defendant's mental health history due to his head injury could justify a lesser sentence, and the fact that defendant has already served twenty-eight months in custody.

"Whether a crime is 'serious' relates to the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged."[15] The crime charged in the Indictment—distribution of a controlled substance—carries a statutory maximum sentence of twenty years in custody.[16]  Under the Guidelines, defendant could be considered a career offender under U.S.S.G. § 4B1.1, based on the government's representation

---

[12]*Sell*, 539 U.S. at 180.

[13]*United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007) (quoting *Bradley*, 417 F.3d at 1107).

[14]*Valenzuela-Puentes*, 479 F.3d at 1226.

[15]*Id.*

[16]21 U.S.C. § 841(b)(1)(C).

that defendant has two prior convictions for violent felonies.  Accordingly, the government maintains that defendant would likely be assigned an offense level of 32, criminal history category of VI, for an advisory guidelines range of 210-262 months.  Even if this Court were to apply the statutory factors in 21 U.S.C. § 3553(a) and find a variance from this range appropriate, the possible penalty is still extremely harsh.[17]  Even giving effect to the fact that the drug sale involved in the underlying charge was for a small amount, the Court finds that on balance, defendant's crime is serious.

Another special circumstance that may cut against the government's interest in prosecution is a case where the expected sentence is in parity with the time the defendant is in custody pending determination of competency issues.  Here, defendant's expected sentence far exceeds the time he has been in custody pending a competency determination.  Defendant faces the possibility of twenty years in custody, while he has been in pretrial detention for twenty-eight months, not all of which is attributable to competency determinations.  Therefore, this circumstance does not lessen the government's interest in prosecution.[18]  The Court finds that the government has a compelling interest in prosecuting this case compared to defendant's interest in refusing the medication.

### Factual Findings

The Court now turns to the factual findings required by *Sell*, which the government must

---

[17]*See Valenzuela-Puentes*, 479 F.3d at 1227 (explaining that recidivism increases the government's interest in prosecution).

[18]Defendant also suggests without elaboration that his First Amendment rights, which are implicated given his belief that God has healed him, should be balanced against the government's interest here.  But defendant does not suggest how a court order on this issue would prohibit his free exercise of religion.  Further, the Court finds that the government's compelling interest in prosecuting this serious crime outweighs any First Amendment interest that may exist here.

show by clear and convincing evidence.[19]  First, the Court looks at whether the administration of Abilify is medically appropriate, meaning "in the patient's best medical interest in light of his medical condition."[20]  This inquiry includes the determination of whether administering Abilify is "substantially likely to render the defendant competent to stand trial."[21]  Dr. Logan testified that he believed the administration of Abilify is medically appropriate in light of defendant's medical condition.  He testified that medication is the "bedrock" of treatment for defendant's mild schizophrenia and that no other form of treatment would be effective without it.

Dr. Logan testified that while, of course, there are no guarantees, Abilify was substantially likely to render defendant competent to stand trial.  Dr. Logan acknowledged that there is always a risk that when an individual stops taking medication and then resumes taking it, the efficacy of the medication will be diminished.  But Dr. Logan was confident that the medication could be effective in the appropriate dose and cites defendant's reports that his thoughts were more organized and that he was more effective while taking Abilify in the past.  While defendant's religious ideas about his condition and his criminal defense are very entrenched, Dr. Logan testified that his paranoia should be greatly reduced.  By reducing his paranoia, the Abilify should allow defendant to be much more able to assist in his own defense and therefore, restore his competency.  So long as defendant was administered low dosages of Abilify, Dr. Logan found that it would be medically appropriate.

---

[19]*United States v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005).  Clear and convincing evidence is evidence that "places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'"  *Valenzuela-Puentes*, 479 F.3d at 1228 (quoting C. McCormick, Law of Evidence § 320 at 679 (1954)).

[20]*Sell v. United States*, 539 U.S. 183, 181 (2003).

[21]*Id.*; *see Bradley*, 417 F.3d at 1114.

Next, the Court must address whether "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair."[22]  Dr. Logan acknowledged that defendant had previously experienced side effects of salivation and sedation when taking Abilify.  He also acknowledged that lethargy at trial would not be a positive development.  However, Dr. Logan stated that, in his opinion, these side effects would be "significantly reduced or eliminated" by decreasing the dose to between 10 and 15 milligrams per day.  He also testified that defendant has reported more organized thoughts in the past when taking Abilify.  Accordingly, Dr. Logan recommends re-evaluation after defendant begins a therapeutic dose to monitor any side effects that may arise.  The Court finds by clear and convincing evidence that when administered in the correct dose, Abilify is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to aid his counsel in his defense, rendering the trial unfair.  The Court will follow Dr. Logan's recommendation and order that defendant be re-evaluated once he has begun taking the medication to assure that the side effects are minimal and the dosage level is appropriate.  Given the above findings, the Court finds that involuntary medication will significantly further the government's interest in prosecuting this case.

Finally, the Court finds by clear and convincing evidence that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results."[23]  Dr. Logan testified that no other form of therapy is effective in treating schizophrenia without the "bedrock" of antipsychotic medication.  "[T]he Court must also consider less intrusive means for

---

[22]*Sell*, 539 U.S. at 181; *see Bradley*, 417 F.3d at 1115.

[23]*See Sell*, 539 U.S. at 181.

administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive measures."[24]  Given this requirement, the Court will first order defendant to consult with his attorney and doctors about voluntarily taking Abilify during competency restoration hospitalization at a dosage level as recommended by Dr. Logan, with follow-up evaluations to assure that the dosage level is appropriate.  If defendant refuses to voluntarily administer this medication, he will be found in civil contempt and the Court will order the involuntary administration of the medication.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion for Order is granted in part and denied in part.  Defendant shall now be hospitalized for restoration of competency measures in accordance with 18 U.S.C. § 4241(d) and is ordered to consult with counsel and with the medical facility doctors about voluntarily administering the antipsychotic medication, Abilify, during his hospitalization at a dosage level in line with Dr. Logan's recommendations in his report and testimony.  If defendant does not submit to this medication voluntarily within ten days of his arrival at the designated medical facility, he will be found in civil contempt of court and involuntary administration will be ordered.

**IT IS SO ORDERED.**

Dated this 12th    day of June 2007.

   S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[24]*Id.*